**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

EUGENE HUDSON, JR.,
Plaintiff,

v.

Civil Action No. 1:17-cv-02094 (JEB)
Judge James E. Boasberg

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES,
Defendant.

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS**

Plaintiff opposes Defendant's motion to dismiss his complaint. Defendant, the American Federation of Government Employees ("AFGE") states two theories in support of its motion to dismiss.

AFGE admits that to survive a motion to dismiss, Mr. Hudson is not required to plead every fact necessary to establish a prima face case of intentional discrimination under Title VII and §1981. *(See: Def. Mot. to Dismiss, February 1, 2018 at p. 6,¶2)*

Yet, AFGE asserts that Mr. Hudson has not backed up his Title VII and §1981 claims by alleging facts in the complaint sufficient to give rise to a plausible inference of racial animus required by *Twombly-Iqbal.*

The Defendant also argues that Mr. Hudson's LMRDA complaint and his later filed employment discrimination complaint are identical, duplicative and constitute impermissible claim-splitting. Citing *Clayton v. District of Columbia* 36 F. Supp. 3d 91, 94 (D.D.C. 2014), Defendant urges the Court to dismiss the later filed employment discrimination complaint.

For the reasons discussed below, Plaintiff urges the Court to reject both the *Twombly-Iqbal* and claim-splitting arguments. Defendant fails to meet the high threshold required of a party seeking to dismiss a complaint prior to discovery. Therefore, Plaintiff respectfully asks the Court to deny Defendant's motion to dismiss.

**Factual Background**

Plaintiff, Eugene Hudson, Jr., is an African-American male who was duly elected by AFGE members as the National Secretary-Treasurer of AFGE ("NST) in 2012 and again in 2015 without opposition for three-year terms.

The two top positions at AFGE are President and NST. Plaintiff is the first African-American elected to the position of NST. Prior to Mr. Hudson's election, J. David Cox held the position of NST.

Among other things, in his complaint Mr. Hudson claims that AFGE and its President J. David Cox discriminated against him on the basis of his race by unilaterally stripping him of major responsibilities typically included in the portfolio of the NST – responsibilities that Mr. Cox held when he was NST.

For example, Plaintiff alleges that Mr. Cox removed him as Chair of the Non-appropriated Fund Instrumentalities Committee and other key chairmanships; that Mr. Cox denied Mr. Hudson's recommendation for a promotion for his African-American staff member; Mr. Cox gave Mr. Hudson a smaller Cost of Living Adjustment increase than he gave to himself and Joseph P. Flynn, the NVP for District 4, who is Caucasian-American; and that Mr. Cox issued a memorandum summarily revoking NST Hudson's longstanding authority to review NEC members' vouchers.

In response, on July 10, 2017, Mr. Hudson filed an EEO complaint with the D. C. Office of Human Rights and the U.S. Equal Employment Opportunity Commission complaining that these and other actions by AFGE constituted impermissible discrimination against him based on his race. The EEOC issued a right to sue letter to Mr. Hudson the following day, July 11.

Mr. Hudson had previously filed litigation in this court claiming that AFGE violated his rights under the LMRDA by unlawfully denying him the right to include a flyer inside an AFGE publication circulated to AFGE members. Attorney Jon Axelrod represents Mr. Hudson in that litigation.

After receiving his July 11, 2017 right to sue letter, Plaintiff asked Mr. Axelrod to file a racial discrimination lawsuit against AFGE on his behalf. Mr. Axelrod declined, stating that his firm did not handle racial discrimination cases.

In August 2016, Plaintiff wrote a letter questioning the reasonableness of certain expenditures by President Cox and other NEC members.

In November 2016, Mr. Hudson sent an email to AFGE local presidents and secretary treasurers (approximately 1800 of AFGE's 300,000 members) commenting on the implications of the election of President Donald Trump.

A month later, in December 2016, AFGE President Cox approved the filing of charges against Mr. Hudson claiming that he violated the Hatch Act by directing an AFGE employee to send the Trump email.

Based on this single charge, AFGE NEC voted to remove Mr. Hudson from his elected office effective immediately. AFGE President J. David Cox accepted the NEC's recommendation and ordered staff to escort Mr. Hudson from his office that same day.

Plaintiff filed a motion for preliminary injunction with this Court seeking reinstatement. In support of the motion, Mr. Hudson produced a written opinion from the Office of the Special Counsel concluding that Mr. Hudson's email did **not** violate the Hatch Act.

Mr. Hudson also asserted that the NEC decision to remove him was tainted by bias. This Court agreed, ruling that the NEC decision to remove Mr. Hudson was "infected" by the bias of NVP Gerald Swanke. (There was no finding by the Court that the Mr. Swanke's bias was racially motivated.)

The Court granted Mr. Hudson's motion for a preliminary injunction and ordered AFGE to reinstate him to his position as NST effective immediately. The Court later rescinded the order, and Plaintiff has filed another motion for a preliminary injunction that is currently pending.

## ARGUMENT

In his racial discrimination complaint Plaintiff alleges, *inter alia*, that AFGE engaged in unlawful disparate treatment of him as compared with similarly situated Caucasian-American employees.

Although Plaintiff did not include this fact in his complaint, during a July 27, 2011 NEC meeting, AFGE President Council 220 Witold Skwierczynski, who is Caucasian-American, used the "N" word, cursed, threatened and lunged at Mr. Hudson in the presence of a number of witnesses.

At the time of the incident, Mr. Hudson was not yet NST. The AFGE President was John Gage, David Cox was the NST, David Borer was AFGE General Counsel and Plaintiff was the National Vice President for AFGE District 12.

One day after the incident, Mr. Hudson filed the following Article XXIII charges against Mr. Skwierczynski:

> "While I was participating in AFGE's NEC meeting conducted the week of July 25-29, 2011 in Washington, D. C. Witold Skwierczynski confronted me outside of the NEC meeting room and became verbally abusive, threatening and intimidating. The incident took place on July 27, 2011 in the hallway as I exited the NEC meeting room for the afternoon break.
>
> "During the encounter with Mr. Skwierczynski, he was loud, agitated, cussing and physically threatening. I was called names, taunted, yelled at and challenged to a physical altercation by Mr. Skwierczynski. I avoided any contact with him and did not provoke or respond to his attack. Mr. Skwierczynski displayed such out of control behavior that witnesses to the incident physically restrained him as I passed by.
>
> "The incident was witnessed by AFGE National President Gage, NST J. David Cox, AFGE General Counsel David Borer, and several members of the NEC.
>
> "This is not an isolated incident. Mr. Skwierczynski has demonstrated behavior such as this in the past both inside and outside of NEC meetings, and it has been allowed to continue for many years. While serving in our capacity as members of the NEC, we should not have to feel intimidated, physically threatened, and/or suffer verbal abuse and bullying by Mr. Skwierczynski or anyone else allowed to attend.
>
> "Our discussions and decisions should not be sidetracked or influenced by the intimidation of one or two out of control individuals who present at the meeting. This sort of bullying behavior is not acceptable and must stop immediately.
>
> "Regretfully, I feel I have no other alternative than to file these charges per AFGE National Constitution Article XXIII section 2(c) & (e). I would also like to recommend that AFGE adopt a policy or constitutional language to address this type of bullying behavior and promote a safer and healthier environment for all officers and members." *(Exhibit 1: Charges Filed by Eugene Hudson Against Witold Skwierczynski, dated July 28, 2011 at 4:10 p.m.)*

On November 22, 2011, AFGE National President John Gage appointed a Committee on Investigation ("COI") to elicit and review evidence relevant to Mr. Hudson's charges against Mr. Skwierczynski.

NVP Everett Kelley witnessed the incident and the COI interviewed him on May 3, 2012. [Mr. Kelley is also a member of the NEC that voted to remove Mr. Hudson as NST for sending a single email to members]. Mr. Kelley gave the following statement:

> "I was at the NEC meeting and Eugene had an issue with his local. We took a recess. Witold came out of nowhere screaming and hollering and name calling. Witold stuck his chin out and calling him names. Eugene didn't do anything. He used the "N" word – not real loud like he didn't want anyone to hear him. He just mouthed it w/o voice. I saw him do it. I was in between them. Eugene never said a word and backed up and went out the door. Sandy Williams was standing very close. Sandy and President Gage may have seen Witold mouth the "N" word. Eugene just walked away – out of the door." *(Exhibit 2: NVP Kelley Interview Notes May 3, 2012)*

Over a year later, on January 30, 2013, the COI dismissed all charges against Mr. Skwierczynski, finding, in pertinent part:

> "The Committee interviewed both NVP Hudson and CP Skwierczynski and interviewed and/or collected statements from seven eyewitnesses to the incident between April 13, 2012 and May 3, 2012. We received statements from NVP Gerald Swanke[1], Cathy Butz, CP George McCubbin, Brian Dewyngaert, NVP Dorothy James, NVP Keith Hill and NVP Everett Kelley.
>
> "The Committee finds that there is no probable cause for the charge against CP Skwierczynski. We do believe that although these findings are serious and inappropriate they do **not** rise to the level of the charge of "engaging in conduct unbecoming a union member."
>
> "The Committee finds that Council President Skwierczynski did **initiate** a confrontation with NVP Hudson during the lunch break of the National Executive Committee meeting on July 27, 2011. The Committee further finds that CP Skwierczynski was loud, agitated, cussed, and may have called NVP Hudson inappropriate names. We find that he challenged NVP Hudson to **hit** him but did not physically threaten NVP Hudson.
>
> "Union officials sometimes find themselves in heated arguments especially when dealing with management officials. **In such instances, behaviors similar to that alleged in this case (excluding the alleged racial remark and physical threat) are protected by the Federal Labor Management Relations Statute."...** We do believe that it would be in the best interests of AFGE to address what we view as inappropriate behavior on the part of CP Skwierczynski. *(Emphasis Added)*

---

[1] Gerald Swanke is the same member that this Court ruled infected the NEC process with bias against Mr. Hudson.

"COMMITTEE RECOMMENDATIONS

"In his interview with the Committee CP Skwierczynski **acknowledged** that he engaged in almost all of the behavior alleged of him, expressed remorse and offered to apologize to NVP Hudson.

"The Committee recommends that CP Skwierczynski write a letter to NVP Hudson apologizing for his actions of that day." *(Emphasis Added)(Exhibit 3: Report of the COI dated January 30, 2013)*

In 2012, AFGE President Gage chose not to run for re-election. NST David Cox ran for President and was elected. Plaintiff Eugene Hudson was elected NST in the same 2012 election.

Nearly two years after Plaintiff filed the Skwierczynski charges, on February 22, 2013, AFGE President David Cox shared the COI findings with Mr. Skwierczynski on Mr. Hudson's charges that he violated Article XXIII of the AFGE National Constitution by engaging in conduct unbecoming a member of AFGE when he threatened, cursed, lunged at and used the "N" word toward Mr. Hudson. *(Exhibit 4: February 22, 2013 Letter from AFGE National President David Cox to Witold Skwierczynski, President AFGE Council 220)*

The Skwierczynski charges are indisputably more egregious than Mr. Hudson's single charge of sending out an email discussing the Trump presidency.

Yet, by a margin of two to one, the COI voted to dismiss *all* charges against Mr. Skwierczynski after determining that he was engaging in free speech (excluding the racist remark and physical threat) protected under the LMRDA.

AFGE did not remove Skwierczynski from office, suspend him or even issue a written reprimand to him. Instead, AFGE directed Skwierczynski to write a letter of apology to Mr. Hudson. *(Exhibit 5: March 18, 2013 Letter of Apology from Witold Skwierczynski to Eugene Hudson)*

AFGE's ruling that Skwierczynski's threats, cursing and use of the racial slur toward Mr. Hudson are protected free speech as guaranteed by the LMRDA represents an AFGE dog whistle to Mr. Hudson and other African-American AFGE members that egregious, racially demeaning behavior is tolerated AFGE and that such actions do **not** constitute conduct unbecoming a member in violation of Article XXIII of the AFGE Constitution.

By contrast, AFGE removed its first African-American National Secretary Treasurer after concluding that his email to union members about the implications of the Trump presidency was *not* protected free speech under the LMRDA.

AFGE's decision to slap Swierczynski's wrist for using a racial slur while opting to escort Mr. Hudson from his elected office in humiliating fashion for writing a single email is but one example of AFGE's unlawful, racially discriminatory disparate practices.

Because of the time and attention required by his involvement in filing the preliminary injunction action, Mr. Hudson was unable to retain legal counsel to file his racial discrimination case until one day before his right to sue letter was set to expire on October 10, 2017.

Undersigned counsel hurriedly filed the complaint on October 10, 2017 and in the process omitted the Skwierczynski incident and other examples of racially disparate treatment.

We respectfully suggest that Plaintiff's complaint nevertheless contains sufficient factual allegations to satisfy the *Twombly/Iqbal* test. Should the Court disagree, Plaintiff requests leave to amend the complaint.

Amendments that do not radically alter the scope and nature of the action…are especially favored. *Smith v. Café Asia,* 598 F. Supp.2d 45, 48 (D.D.C. 2009) Because amendments are to be freely given absent good reason, Defendants bear the burden of adducing a colorable basis for denying leave to amend. *Abdullah v. Washington*, 530 F. Supp. 2d 112, 15 (D.D. C. 2008)

**2. The Court Should Reject Defendant's Claim-Splitting Argument**

As a second basis for the dispositive motion, AFGE cites *Clayton v. District of Columbia* 36 F. Supp. 3d 91, 94 (D.D.C. 2014) for the proposition that by filing his racial discrimination complaint after his LMRDA complaint, Mr. Hudson engaged in impermissible claims splitting. Defendant argues:

> "To the extent that [Mr.] Hudson's first-filed LMRDA lawsuit and this second-filed Title VII§1981 lawsuit both challenge the legality of the NEC's decision to remove Hudson from office, the two lawsuits plainly arise out of the same nucleus of facts.
>
> "That being so, assuming [Hudson's first filed LMRDA lawsuit] was already final, [this second-filed Title VII/§1981 lawsuit] would be precluded under res judicata analysis...notwithstanding the fact that Hudson challenges the legality of his removal on different legal theories in the two lawsuits." *(Def. Mot. to Dismiss at p. 20, ¶1)*

The Court should reject this argument. The *Clayton* case is distinguishable. There, the plaintiff, Betty Clayton, sued the District of Columbia and the District of Columbia National Guard alleging discrimination and retaliation under Title VII *("Clayton 1).*

In *Clayton 1*, Plaintiff alleged the Defendants violated the Whistle Blower Protection Act and other claims. She then received a right to sue letter and filed for leave to amend *Clayton 1* to include the Title VII claims of retaliation and sex discrimination. While awaiting a decision on her request for leave to amend *Clayton 1*, Clayton became concerned that the time allowed under her right to sue letter to add the Title VII claims would expire before she received leave to amend.

As a precaution, Ms. Clayton filed *Clayton 2* which the Clayton Court determined makes claims of retaliation and sex discrimination under Title VII based on the same facts as are alleged in *Clayton 1*.

The Court granted Ms. Clayton leave to amend *Clayton 1* on November 21, 2013, and she filed a second amended complaint including the two Title VII claims on the same day. The

District filed a motion to dismiss *Clayton 2*, averring claim-splitting and failure to state a claim. Ms. Clayton then filed a motion to consolidate the two cases under FRCP 42(a).

The Court denied the motion to consolidate, holding that "under the *Katz v. Gerardi*[2] test for claim splitting, *Clayton 2* would be precluded because the facts alleged in the complaints in both *Clayton 1* and *Clayton 2* are identical and, therefore, duplicative actions.

The Court also ruled that dismissal of *Clayton 2* would "not adversely impact Ms. Clayton because she "maintains an avenue through an amended *Clayton 1* to seek redress of her additional Title VII claims."

Mr. Hudson's case is distinguishable from *Clayton* because, as Defendant admits in its motion to dismiss, Plaintiff "seeks relief on different legal theories in the two cases". *(Def's Motion to Dismiss at p. 19 ¶3)*

We agree. In his LMRDA complaint, Plaintiff seeks relief from Defendant's decision to remove him as the elected NST for allegedly engaging in conduct unbecoming a member under Article XXIII of the AFGE Constitution by sending an email to AFGE members following the election of President Donald Trump.

By contrast, in his Title VII/Section 1981 racial discrimination case, Plaintiff alleges that AFGE discriminated against him on the basis of his race for years in a number of ways, including, stripping him of key responsibilities traditionally accorded to his elected position as NST; refusing to approve his recommendation for a promotion for his African American staff member; refusing to grant him the same COLA increase granted to similarly situated Caucasian-American AFGE officers; and ultimately, stripping him of his position as the first African-American AFGE NST on the pretext that his circulation of the Trump email constitutes conduct

[2] 655 F.3d 1212, 1219 (10th Cir. 2011)

unbecoming a member in violation of the AFGE Constitution and thereby justifies his removal from elected office.

It is well settled that the trier of fact in employment discrimination cases may infer the ultimate fact of discrimination from the falsity of the employer's explanation. Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. *Reeves v. Sanderson Plumbing Products, Inc.* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)

Moreover, unlike *Clayton*, Mr. Hudson's LMRDA and discrimination complaints are **not** identical or duplicative. Resolution of Mr. Hudson's LMRDA complaint will not preclude his racial discrimination claims.

Additionally, under Title VII, Mr. Hudson has the right to claim that AFGE's decision to remove him from office was unlawful on multiple grounds because AFGE terminated him based on mixed motives.

Among those motives are AFGE's intent to silence Mr. Hudson's right to free speech (and thereby impose a chilling effect on the rights of other AFGE members to exercise their right to free speech); retaliate against Mr. Hudson for his exposure of accounting irregularities in the travel vouchers of AFGE officers; undermine Plaintiff's ability to successfully run for office in furtherance of certain factional union political agendas *and* for racially discriminatory reasons.

"Using the mixed-motive theory, a Title VII plaintiff can establish an unlawful employment practice by showing that discrimination or retaliation played a motivating part or was a substantial factor in the employment decision, without proving that an impermissible consideration was the sole or but-for motive for the employment action." Civil Rights Act of 1964, §703(m), 42 U.S.C.A. §20003-2(m); *Fogg v. Gonzales,* 492 F.3d 447 (D. C. Cir. 2007);

*Porter v. Natsios*, 414 F.3d 13, 18 (D.C. Cir. 2005) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

Mr. Hudson's racial discrimination complaint also alleges that AFGE violated Title VII when it retaliated against him for filing the July 10, 2017 EEO complaint.

In its motion to dismiss, AFGE suggests that Mr. Hudson's complaint fails to allege that AFGE had actual or constructive notice of the EEO charge prior to his removal. In a sealed transcript of a hearing introduced into evidence in the related LMRDA pending before this Court, AFGE General Counsel David Borer *admits* that AFGE received service of Mr. Hudson's EEO complaint.

Plaintiff's complaint contains sufficient facts to satisfy the *Twombly-Iqbal* plausibility requirement. The Court should reject Defendant's claim-splitting argument.

Should, the Court find that Mr. Hudson's discrimination complaint is identical to and duplicative of his LMRDA complaint, Plaintiff asks the Court to grant Mr. Hudson leave to amend the earlier filed LMRDA complaint to add the discrimination counts or consolidate the two cases.

Respectfully submitted,

__________/s/______________
Marlene (Kemi) Morten
D. C. Bar 272575
Counsel for Plaintiff
3825 South Capitol Street, S. W.
Washington, D. C. 20032
202-379-4806
*kemimorten@unfoldment.org*

Date: March 8, 2018

# EXHIBIT 1

**Janet Crawford**

**From:** Rhonda Stalker, AFGE D-12 <rhonda@afged12.org>
**Sent:** Thursday, July 28, 2011 4:10 PM
**To:** Eugene Hudson
**Subject:** RE: Art. 23 draft

I had.. I wasn't aware you had changed your phone and are only receiving you AFGE.org email. See below;

AFGE National Executive Council
80 F. Street, NW
Washington, DC 20001

AFGE National President John Gage
80 F. Street, NW
Washington, DC 20001

RE: Article XXIII charge against Witold Skwierczynski

Dear Members of AFGE NEC, and National President Gage

By this letter I prefer charges under AFGE National Constitution Article XXIII, section 2 (e) against Witold Skwierczynski as a member of AFGE.

While I was participating in AFGE's NEC meeting conducted the week of July 25-29, 2011 in Washington, DC, Witold Skwierczynski confronted me outside of the NEC meeting room and became verbally abusive, threatening, and intimidating. The incident took place on July 27, 2011 in the hallway as I exited the NEC meeting room for afternoon break. During the encounter with Mr. Skwierczynski. he was loud, agitated, cussing, and physically threatening. I was called names, taunted, yelled at and challenged to a physical altercation by Mr. Skwierczynski. I avoided any contact with him and did not provoke nor respond to his attack. Mr. Skwierczynski displayed such out of control behavior that witnesses to the incident physically restrained him as I passed by. The incident was witnessed by AFGE National President Gage, National Secretary Treasurer J. David Cox, AFGE General Counsel David Borer, and several members of the NEC.

This is not an isolated incident, Mr. Skwierczynsk has demonstrated behavior such as this in the past both inside and outside of NEC meetings, and it has been allowed to continue for many years. While serving in our capacity as members of the NEC we should not have to feel intimidated, physically threatened, and/or suffer verbal abuse, and bullying by Mr. Skwierczynski or anyone else allowed to attend. As NEC Members we are here to serve and represent the majority of our members and AFGE. Our discussions and decisions should not be sidetracked or influenced by the intimidation of one or two out of control individuals who present at the meeting. This sort of bullying behavior is not acceptable and must stop immediately.

Regretfully, I feel I have no other alternative than to file these charges per AFGE National Constitution Article XXIII, section 2 (c) & (e). I would also like recommend that AFGE adopt a policy or constitutional language to address this type of bullying behavior and promote a safer and healthier environment for all officers and members.

Rhonda Stalker



000478

# EXHIBIT 2

NVP Kelley Interview 05/03/12

It was at the NEC meeting and Eugene had an issue with his local. We took a recess. Witold came out of nowhere screaming and hollering and name calling.
Witold stuck his chin out and calling him names. Eugene didn't do anything.
He used "n" word – not real loud like he didn't want anyone to hear him. He just mouthed it w/o voice. I saw him do it. I was in between them.
Eugene never said a word and backed up and went out the door.
Sandy Williams was standing very close.
Sandy and President Gage may have seen Witold mouth the "n" word. Eugene just walked away – out of the door.

# EXHIBIT 3

# REPORT OF THE COMMITTEE OF INVESTIGATION INTO THE CHARGES FILED BY TWELFTH DISTRICT NATIONAL VICE PRESIDENT EUGENE HUDSON, JR. AGAINST COUNCIL 220 PRESIDENT WITOLD SKWIERCZYNSKI

This Committee of Investigation was appointed by AFGE National President John Gage on November 22, 2011 and was responsible for eliciting and reviewing evidence relevant to the written charges and to determine whether good and sufficient grounds exist for finding probable cause on each charge and that the accused committed an offense.

## THE CHARGE(S)

NVP Hudson charged CP Skwierczynski with "engaging in conduct unbecoming a union member". The specifics of the charge were that during the lunch break of the National Executive Committee meeting on July 27, 2011 CP Skwierczynski confronted NVP Hudson and became verbally abusive, threatening, and intimidating. He was loud, agitated, cussing, and physically threatening. He called him names, taunted him, yelled and challenged him to a physical altercation. Mr. Skwierczynski displayed such out of control behavior that witnesses needed to restrain him.

## COMMITTEE INVESTIGATION

The Committee interviewed both NVP Hudson and CP Skwierczynski and interviewed and/or collected statements from seven eyewitnesses to the incident between April 13, 2012 and May 3, 2012. We received statements from NVP Gerald Swank, Cathy Butz, CP George McCubbin, Brian Dewyngaert, NVP Dorothy James, NVP Keith Hill and interviewed NVP Everett Kelley.

## COMMITTEE FINDINGS

The Committee finds that there is no probable cause for the charge against CP Skwierczynski. We do believe that although these findings are serious and inappropriate they do not rise to the level of the charge of "engaging in conduct unbecoming a union member".

The Committee finds that Council President Skwierczynski did initiate a confrontation with National Vice President Hudson during the lunch break of the National Executive Committee meeting on July 27, 2011. The Committee further finds that CP Skwierczynski was loud, agitated, cussed, and may have called NVP Hudson inappropriate names. We find that he challenged NVP Hudson to hit him but did not physically threaten NVP Hudson.

Union officials sometimes find themselves in heated arguments especially when dealing with management officials. In such instances behaviors similar to that alleged in this case (excluding the alleged racist remark and physical threat) are protected by the Federal Labor Management Relations Statute. Although this altercation was not between a union official and a management official, union members do sometimes engage in heated altercations. It is apparent that this confrontation was a result of long standing and bitter disagreements between NVP Hudson and CP Skwierczynski and was directly sparked by comments NVP Hudson made at the NEC meeting immediately preceding the lunch break. We do believe that it would be in the best interests of AFGE to address what we view as inappropriate behavior on the part of CP Skwierczynski.

## COMMITTEE RECOMMENDATIONS

In his interview with the Committee CP Skwierczynski acknowledged that he engaged in almost all of the behavior alleged of him, expressed remorse and offered to apologize to NVP Hudson. The Committee

recommends that CP Skwierczynski write a letter to NVP Hudson apologizing for his actions of that day. We further recommend that CP Skwierczynski pledge that he will not engage in similar conduct in the future towards NVP Hudson during NEC meetings (including during breaks).

The Committee suggests that both parties take part in AFGE Mediation Services in order to constructively work through the disagreements they have.

The Committee further recommends that AFGE develop and publish a policy on decorum for participants and observers at NEC meetings.

This report and our investigative notes have been submitted to the American Federation of Government Employees Office of General Counsel via certified mail on this 30th day of January 2013.

__________________________

Marilyn Wiley, NAAFPC
AFGE District 14

__________________________

Demetrios Stroubakis, President
AFGE Council 120

__________________________

Timothy Shamble, President
AFGE Local 1812

Witnesses

| | |
|---|---|
| NVP Hudson | 04/13/12 |
| NVP Swank | 03/14/12 |
| Cathy Butz | 03/22/12 |
| C.P. McCubbin | 04/11/12 |
| Brian Dewyngaert | 03/28/12 |
| NVP James | 03/19/12 |
| NVP Hill | 03/14/12 |
| C.P. Skwierczynski | 04/27/13 |
| NVP Kelley | 05/03/12 |

# EXHIBIT 4



AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO

**J. David Cox, Sr.**
National President

**Eugene Hudson, Jr.**
National Secretary-Treasurer

**Augusta Y. Thomas**
National Vice President for Women and Fair Practices

7z/C-220/316881

February 22, 2013

Witold Skwierczynski, President
AFGE Council 220
Po Box 47638
Nessafol (C220)
Baltimore, MD 21244-7638

Dear Mr. Skwierczynski:

This is to inform you of the findings of the independent Committee of Investigation appointed to investigate charges filed against you by former District 12 National Vice President and current National Secretary Treasurer Eugene Hudson, Jr. The Committee, following a thorough investigation including the interview of nine witnesses, found no probable cause to prefer charges against you. Per the enclosed report, the Committee voted, two to one, to dismiss the charges.

I accept the findings of the Committee of Investigation. The charges will be dismissed if you issue a written apology to NST Hudson, with copy to the NEC, and pledge not to engage in similar conduct at NEC meetings, including breaks. I would also recommend mediation to help settle the longstanding differences between the two of you.

By copy of this letter, I extend my appreciation to the members of the Committee for their work.

Sincerely and in solidarity,

J. David Cox, Sr.
National President

Enc.

cc: NEC
Committee of Investigation

80 F Street, N.W., Washington, DC 20001 • (202) 737-8700 • FAX (202) 639-6490 • www.afge.org

# EXHIBIT 5

**NATIONAL COUNCIL OF SSA FIELD OPERATIONS LOCALS**
**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO**
*Representing over 50,000 SSA employees across the nation, Puerto Rico and Pacific Islands*

P O Box 47638
Baltimore MD 21244-7638
(410) 965-6707
March 18, 2013

Eugene Hudson Jr.
AFGE National Secretary-Treasurer
80 F St. NW
Washington DC 20001

Dear Mr. Hudson:

On March 15, 2013 I received a letter from President Cox dated February 22, 2013 informing me of the findings of the Committee of Investigation appointed to investigate the charges that you filed against me. President Cox stated that the Committee found no probable cause to prefer charges against me.

As I told the committee when they contacted me by conference call during their investigation, I was out of line when I approached you on July 27, 2011 immediately after the NEC broke for lunch during their meeting of that day. I should not have yelled at you in anger and lost control of my emotions. I apologize for this behavior and pledge to avoid such angry outbursts in the future during NEC meetings including meeting breaks.

I believe that it is important that we resume a dialogue and bury our differences. Therefore, I am willing to accept the recommendation of President Cox and engage in mediation to see if we can settle our differences. Hopefully you will agree and we can schedule such mediation under the Women's and Fair Practices Department mediation program.

Sincerely,

x

Witold Skwierczynski
President

Cc: NEC