UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EUGENE HUDSON, JR.,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN FEDERATION OF<br>GOVERNMENT EMPLOYEES,<br><br>Defendant. | Civil Action No. 17-2094 (JEB) |

**MEMORANDUM OPINION**

In 2012, Plaintiff Eugene Hudson became the first black person elected to serve as National Secretary-Treasurer for Defendant American Federation of Government Employees. Despite being re-elected in 2015, he claims that the Union mistreated him, and ultimately fired him, because of his race in violation of Title VII and 42 U.S.C. §§ 1981, 1983. AFGE now moves to dismiss, arguing that Plaintiff has failed to state a claim upon which relief may be granted. Agreeing that the bulk of his allegations either fail to pass the relatively undemanding Rule 12(b)(6) standard or are barred under the doctrine of claim-splitting, the Court will largely grant the Motion.

**I.  Background**

The parties are not strangers to this Court. Although generally on a motion to dismiss a court may not look outside of the pleadings, it "may take judicial notice of other cases including the same subject matter or questions of a related nature between the same parties." Veg-Mix, Inc. v. U.S. Dep't of Agric., 832 F.2d 601, 607 (D.C. Cir. 1987) (citation omitted); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (court may take judicial notice of other opinions

1

involving the same parties without converting motion to dismiss into motion for summary judgment "not for the truth of the facts recited therein, but for the existence of the opinion") (citation omitted); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997) (court may consider "matters of which [it] may take judicial notice" in deciding motion to dismiss). It still must, however, treat the facts in Plaintiff's Complaint as true. Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).

A. Factual History

AFGE is a national labor organization representing over 1000 federal and D.C. government employees. See Compl., ¶ 17. The Union's governing body, the National Executive Council, consists of the National President, the National Secretary-Treasurer, the National Vice President for Women and Fair Practices, and the National Vice Presidents for the 12 AFGE districts. Id., ¶ 18. The President and the NST are the top two positions in the organization. Id., ¶ 15. Plaintiff was elected to serve as NST for two consecutive three-year terms beginning in 2012. Id., ¶¶ 14-15. After taking office, Hudson alleges that "AFGE President J. David Cox and his staff harassed [him] on the basis of his race and created a hostile work environment." Id., ¶ 20.

Although Plaintiff contends that this discriminatory and abusive behavior had been ongoing "[s]ince 2012," id., ¶ 20, all of the conduct alleged in the Complaint occurred in the last two years. Over the course of the latter half of 2016, Cox systematically and "unilaterally stripped" Hudson of many of his NST duties. Id., ¶ 24. First, in June, without receiving approval from the NEC, Cox took away Hudson's supervisory responsibilities for the Information Services department. Id., ¶¶ 23-25. The following month, after Hudson questioned NEC members about travel expenses, his "investigations" became a heated discussion topic at an

NEC retreat. Id., ¶ 32. In August, Cox "issued a memorandum stating that he would be the sole authority for all NEC members' travel vouchers, except for his own." Id., ¶ 34. By the end of 2016, Cox had "removed" Hudson "from all chairmanships." Id., ¶ 35. Also, at some point, Plaintiff recommended a promotion for a black member of his staff, which Cox denied. Id., ¶¶ 28-29.

Cox's onslaught against Plaintiff continued into the next year. In January 2017, federal employees received a salary increase to reflect the increased cost of living. AFGE employees, who are pegged to the same scale, also received a bump. In contrast to "the full Cost of Living Adjustment 2.88%" that Cox gave himself and an NVP (both white), the Union President only "gave Plaintiff . . . a 2.48% increase." Id., ¶¶ 22, 26-27.

The internal strife reached a breaking point after an NVP filed a charge against Hudson. Pursuant to Union protocol, AFGE convened a Committee of Investigation in July 2017. Id., ¶¶ 36-37. The COI considered five charges, dismissing all but one. Id., ¶¶ 38-39. It "found probable cause that a November 15, 2016[,] email that [Plaintiff] sent to AFGE members concerning President Donald Trump's election constituted malfeasance" under the Union Constitution. Id., ¶ 39. In August, the NEC met and "found NST Hudson guilty based on the single . . . charge," id., ¶ 41, and made the unprecedented decision to remove him from office. Id., ¶ 16 ("Plaintiff is the first national officer of any race in the history of the AFGE to have been removed from elected office.").

   B. Litigation

On September 12, 2017, Hudson filed a lawsuit, alleging that his discharge violated the Labor-Management Reporting and Disclosure Act (LMRDA) and the Labor Management Relations Act (LMRA). See Hudson v. AFGE, No. 17-1867. There was no mention that his race

3

played any role at all in AFGE's actions. The LMRDA suit, which is still pending before this Court, has taken many twists and turns including the granting (and subsequent vacating) of Plaintiff's first Motion for Preliminary Injunction, see Hudson v. AFGE, 2017 WL 5449806 (D.D.C. Nov. 9, 2017), the dismissal of three of the four counts, see Hudson v. AFGE, 2018 WL 707431 (D.D.C. Feb. 5, 2018), the denial of a second Motion for Preliminary Injunction as moot, see Minute Order of February 20, 2018, the permitting of the filing of an amended complaint, id., and, most recently, the denial of Plaintiff's third Motion for Preliminary Injunction. See Hudson v. AFGE, 2018 WL 1587473 (D.D.C. Apr. 2, 2018).

On July 10, 2017, Hudson filed a charge of discrimination and retaliation with the District of Columbia Office of Human Rights and the U.S. Equal Employment Opportunity Commission. See Compl., ¶ 8, ECF No. 1-3. The EEOC issued him a right-to-sue letter the next day. See ECF No. 1-4. On October 10, 2017 — one month after filing his LMRDA action — Plaintiff brought this four-count suit, alleging employment discrimination, retaliation, a hostile work environment, and "pretextual discrimination." He seeks "retroactive reinstatement as NST, with all attendant back pay, benefits[,] and other emoluments of employment," and $300,000 in compensatory damages. See Compl. at 8. Plaintiff's discrimination case was reassigned to this Court as related, as it was already presiding over the LMRDA matter. See ECF No. 7. Defendant now moves to dismiss.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." Although the notice pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 337 (2005), and "detailed factual allegations" are not necessary to withstand a Rule

4

12(b)(6) motion, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and there must be "more than a sheer possibility that a defendant has acted unlawfully." Id.

As it must at this stage, the Court treats all of the facts in the Complaint as true. Sparrow, 216 F.3d at 1113. In evaluating the sufficiency of Plaintiff's Complaint under Rule 12(b)(6), the Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." St. Francis Xavier Parochial Sch., 117 F.3d at 624; see Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015). Although a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555-56 (citation omitted).

### III. Analysis

Before addressing the specific counts, a few housekeeping notes are in order. Plaintiff states three statutory bases for this action: Title VII and 42 U.S.C. §§ 1981, 1983. Section 1983 is plainly not available here as AFGE is not a state actor. See Chandler v. W.E. Welch & Assoc., Inc., 533 F. Supp. 2d 94, 103 (D.D.C. 2008). A plaintiff may, however, invoke § 1981 when he has "suffered an injury flowing from the racially motivated breach of his contractual relationship with another party." Hamilton v. District of Columbia, 720 F. Supp. 2d 102, 113-14 (D.D.C. 2010). In race-discrimination employment cases, Title VII and § 1981 overlap such that the

analysis here applies to both. Ayissi-Etoh v. Fannie Mae, 712 F.3d 572, 576 (D.C. Cir. 2013). With that in mind, the Court addresses his counts in turn.

A. Discrimination

Title VII makes it "an unlawful employment practice . . . to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As a member of a protected class, Hudson must show that (1) he suffered an adverse employment action (2) because of his race to prevail on his discrimination claim. See Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008).

He easily satisfies the first element. An "adverse employment action" includes any "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (citation omitted). The Complaint provides several examples of such actions sufficient to state a claim. Plaintiff alleges that President Cox "unilaterally stripped [him] of key areas of responsibilities" and did not give him the same "salary increase" as white employees. See Compl., ¶¶ 24, 26-27, 34. And, of course, his ultimate termination is an adverse employment action. Id., ¶ 41.

AFGE does not deny that any of these events occurred, but argues that this count should be dismissed because Hudson's claim "is not backed up by alleged facts sufficient to give rise to a plausible inference of such racial animus." Mot. to Dismiss at 7. This, however, asks for more than what is required. At the motion-to-dismiss stage, the pleading standards "for discrimination cases" are quite lenient because "the precise requirements of a *prima facie* case can vary depending on context" and "should not be transposed into a rigid pleading standard."

6

Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002); Jones v. Bernanke, 685 F. Supp. 2d 31, 40 (D.D.C. 2010) (employment-discrimination plaintiff faces a "relatively low hurdle at the motion to dismiss stage"). Accordingly, "'[b]ecause racial discrimination in employment is a claim upon which relief can be granted,'" alleging that an adverse employment action occurred "'because of [] race' is all a complaint has to say to survive a motion to dismiss under Rule 12(b)(6)." Sparrow, 216 F.3d at 1115 (quoting Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998)). Hudson has done so here. See Compl., ¶ 45.

Defendant's alternative argument gains more traction. This action and Plaintiff's LMRDA one both allege that Hudson was improperly terminated via the same procedures. AFGE thus argues that Hudson cannot bring two suits "involving the same subject matter at the same time in the same court and against the same defendant." Sweeney v. U.S. Parole Comm'n, 197 F. Supp. 3d 78, 80 (D.D.C. 2016) (citation omitted). The Court agrees.

"To determine whether a plaintiff is claim-splitting, [t]he proper question is whether, assuming the first suit was already final, the second suit would be precluded under res judicata analysis." Clayton v. District of Columbia, 36 F. Supp. 3d 91, 94 (D.D.C. 2014) (internal quotation marks and citation omitted). *Res judicata* "bars further claims by parties . . . based on the same cause of action," Montana v. United States, 440 U.S. 147, 153 (1979), on "any ground for relief which [the parties] already have had an opportunity to litigate[,] even if they chose not to exploit that opportunity." Hardison v. Alexander, 655 F.2d 1281, 1288 (D.C. Cir. 1981). "Whether two cases implicate the same cause of action turns on whether they share the same nucleus of facts." Drake v. Fed. Aviation Admin., 291 F.3d 59, 66 (D.C. Cir. 2002) (internal quotation marks and citation omitted). The Court must therefore decide whether Hudson would

be precluded from bringing a discrimination claim upon final judgment in his other pending litigation.

The gravamen of Count I in Plaintiff's LMRDA suit is that the Union conspired to oust him in "retaliation" for (1) expressing concern about "AFGE expenses and vouchers submitted by AFGE National Vice Presidents"; (2) deciding to oppose Cox in the 2018 election; and (3) his post-election email. See No. 17-1867, Amend. Compl., ¶¶ 115-117. Here, he recounts the same adverse action — his termination — but ascribes a discrimination motive to Defendant's actions. See Compl., ¶¶ 32, 39, 45. This he may not do. It is irrelevant that he "seeks relief on different legal theories in the two cases," Opp. at 10 (quoting Mot. to Dismiss at 19); *res judicata* applies to claims a plaintiff had an "opportunity to litigate[,] even if [he] chose not to exploit that opportunity." Hardison, 655 F.2d at 1288 (emphasis added); Menoken v. McGettigan, 273 F. Supp. 3d 188, 195-96 (D.D.C. 2017) ("[A] party cannot escape the preclusive effect of [*res judicata*] by raising a different legal theory or seeking a different remedy that was available to her in the prior action."). Hudson's claim of discrimination as it relates to his termination would clearly be precluded under *res judicata* and, accordingly, cannot be a part of this suit.

Plaintiff's discrimination claim, however, includes additional adverse actions that do not appear in his LMRDA suit: "stripping him of key responsibilities traditionally accorded to his elected position as NST; refusing to approve his recommendation for a promotion for his African American staff member; [and] refusing to grant him the same COLA increase granted to similarly-situated Caucasian American AFGE officers." Opp. at 10. Although these actions may well be "related in time, space, origin, [and] motivation," I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co., 723 F.2d 944, 949 n.5 (D.C. Cir. 1983) (citation omitted), and therefore arguably "share the same nucleus of facts" with his LMRDA suit, Defendant only relies on claim-splitting

to dismiss those claims pertaining to Hudson's removal. See Reply at 5. The allegations in Count I that do not relate to Plaintiff's termination, therefore, may proceed.

In an effort to save his removal claim, Plaintiff asks for "leave to amend the earlier filed LMRDA complaint to add the discrimination counts or consolidate the two cases." Opp. at 12. The Court denies this request. First, if he wishes to amend the complaint in case number 17-1867, he must seek leave to do so in that case, not here. Second, he has not followed the appropriate rules. See Benoit v. U.S. Dep't of Agric., 608 F.3d 17, 21 (D.C. Cir. 2010) (request for leave to amend "must be submitted in the form of a written motion") (citation omitted); Local Rule 15.1 (motion for leave to amend "shall be accompanied by an original of the proposed pleading as amended"). Finally, the decision whether to consolidate cases "is within the broad discretion of the trial court, Stewart v. O'Neill, 225 F. Supp. 2d 16, 21 (D.D.C. 2002), and the Court declines to do so here based on a few words at the end of Plaintiff's Opposition.

B. Retaliation

In addition to providing a shield against discrimination, Title VII prohibits an employer from "discriminat[ing] against [an] employee[] . . . because he has made a charge" against the employer for discrimination. See 42 U.S.C. § 2000e-3(a). Plaintiff claims that AFGE's "conduct as alleged herein constitutes retaliation . . . because he engaged in" protected activities. See Compl., ¶ 48. In his Opposition, Hudson clarifies that this count is based on one protected activity — *i.e.*, his filing of the July 10, 2017, EEO Complaint. See Opp. at 12. Because the only alleged adverse employment action that occurred after this date is Hudson's termination, this claim will be dismissed for improper claim-splitting.

### C. Hostile Work Environment

Hudson next brings a hostile-work-environment claim. Title VII's discrimination prohibition "is not limited to economic or tangible discrimination," but "evinces a congressional intent" that employees should not be forced to "work in a discriminatorily hostile or abusive environment." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115-16 (2002) (internal quotation marks and citation omitted). "[W]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks omitted)). While a plaintiff need not prove a hostile work environment at this stage, he still must allege "extreme" conduct that rises to the "demanding" standard for such a claim. Faragher v. Boca Raton, 524 U.S. 775, 788 (1998). Plaintiff's Complaint is devoid of any allegations of behavior "so objectively offensive as to alter the conditions of" his employment." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) (internal quotation marks omitted).

The Complaint does not specifically state what constituted a hostile work environment but only "reallege[s] and incorporate[s] by reference" the previous paragraphs. See Compl., ¶ 49 ("The Defendant's conduct as alleged above constitutes [a] hostile and abusive working environment in violation of Title VII and 42 U.S.C. 1981 and/or 1983."). Taken generously, those acts include: (1) removing key NST responsibilities from Hudson's purview; (2) failing to give him the same cost of living adjustment as white employees; (3) refusing to promote a black member of his staff; and (4) his termination. See Compl., ¶¶ 24, 26-29, 34, 41. These actions fall far short of the kind of "sever[e] or pervasive[]" conduct that Title VII was designed to protect against. See Baird v. Gotbaum, 792 F.3d 166, 169 (D.C. Cir. 2015).

Perhaps sensing that his Complaint was not enough, Hudson devotes nearly half of the argument in his Opposition to an incident from 2011 — which he admits was not included in his Complaint — where a local AFGE President called him a racial slur. See Opp. at 4-8. But, again, oppositions to dispositive motions are no place to stick in motions to amend. See Benoit, 608 F.3d at 21; Local Rule 15.1; Kingman Park Civic Ass'n v. Gray, 27 F. Supp. 3d 142, 165 n.10 (D.D.C. 2014) ("[I]t is well settled law that a plaintiff cannot amend its complaint by the briefs in opposition to a motion to dismiss."). Even taking everything in the Complaint as true, Hudson has not alleged a hostile work environment. Count III is also dismissed.

    D. "Pretextual Discrimination"

In a final bid, Hudson tacks on a fourth count for "[p]retextual [d]iscrimination," claiming that "[t]he reasons stated by AFGE for harassing, discriminating against NST Hudson and removing Mr. Hudson from the position of NST are not true." Compl. at 7, ¶ 51. Pretextual discrimination, of course, does not exist as a stand-alone cause of action apart from, say, race or sex discrimination. To the extent this catch-all claim alleges a violation of Title VII, it is duplicative of Count I and will be dismissed in part for the same reasons.

**IV.    Conclusion**

For the above reasons, Counts II, III, and IV will dismissed for failure to state a claim. Count I may go forward except for any claims that relate to Plaintiff's termination. A separate Order consistent with this Opinion will be issued this day.

                                           */s/ James E. Boasberg*
                                           JAMES E. BOASBERG
                                           United States District Judge

Date: April 10, 2018