**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

EUGENE HUDSON, JR.,         )
                                   )
        Plaintiff,     )
                                   )
v.                           )     No. 1:17-cv-02094-JEB
                                   )
AMERICAN FEDERATION OF    )
GOVERNMENT EMPLOYEES,    )
                                   )
        Defendant.   )
_____)

**DEFENDANT AFGE'S CONSOLIDATED RESPONSE TO**
**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**AFGE'S MOTION FOR SUMMARY JUDGMENT AND**
**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

# INTRODUCTION

On January 22, 2020, Plaintiff Eugene Hudson filed, under two separate ECF numbers (46 & 47), a single "corrected" document styled as "Plaintiff's Memorandum in Opposition to the Motion for Summary Judgment and Plaintiff's Cross Motion for Summary Judgment" (hereinafter, "Plaintiff's Memorandum" or "Pl. Mem."). On that same date, Hudson submitted, in ECF No. 48, a set of Exhibits to accompany Plaintiff's Memorandum. And, by Order dated January 23, this Court granted AFGE's motion to file a Consolidated Response to these filings.

In Part I of this Consolidated Response, we demonstrate that Plaintiff's Memorandum does nothing to defeat the showing in AFGE's summary judgment papers (ECF No. 30) that AFGE is entitled to summary judgment on each of the race discrimination claims left standing by this Court's April 10, 2018 Order granting AFGE's Motion to Dismiss in substantial part. Accordingly, AFGE's motion for summary judgment on those remaining claims should be granted, and Hudson's cross-motion for summary judgment on those remaining claims denied.

In Part II of this Consolidated Response, we show that Hudson's cross-motion for summary judgment should be denied irrespective of this Court's ruling on AFGE's motion for summary judgment. As a threshold matter, Hudson's cross-motion is untimely by seven months and should be stricken on that basis alone. Beyond that, Hudson's cross-motion is not a genuine summary judgment motion properly before this Court, because it does not even attempt to make the kind of showing that Rule 56 requires in support of a genuine summary judgment motion, or even make the claim that Hudson is entitled to the summary relief contemplated by Rule 56.

## ARGUMENT

**I.    PLAINTIFF'S MEMORANDUM DOES NOTHING TO DEFEAT AFGE'S SHOWING THAT IT IS ENTITLED TO SUMMARY JUDGMENT ON EACH OF HUDSON'S REMAINING RACE DISCRIMINATION CLAIMS**

   A.   Hudson Does Not Offer Any Record Evidence Or Any Legal Argument Undermining AFGE's Showing In Parts I-II Of AFGE's Opening Brief That Each Of His Race Discrimination Claims Fails As A Matter Of Law And Is Due To Be Dismissed

Plaintiff's Complaint asserted numerous race-based claims against AFGE, including (i) a retaliation claim; (ii) a racially hostile work environment claim; (iii) a claim that Hudson was removed from office by AFGE's National Executive Council ("NEC") for impermissible race-based reasons; and (iv) a smattering of claims that, prior to Hudson's removal from office by the NEC, AFGE's National President J. David Cox took a handful of lesser adverse employment actions against Hudson based on Cox's alleged racial animus towards African Americans. In its above-referenced Order disposing of AFGE's Motion to Dismiss, this Court dismissed claims (i), (ii) & (iii), leaving intact *only* Hudson's claims that Cox had taken a handful of adverse employment actions against him for impermissible race-based reasons.

In AFGE's opening brief in support of summary judgment ("AFGE Br."), we divided this handful of claims into two separate groups for analytical purposes—addressing Claims 1, 2 & 3

individually in Part I of the brief at pp. 5-13; and then addressing Claims 4-5 jointly in Part II of the brief at pp. 13-17.  The upshot of Parts I and II is that, on the undisputed facts of record and the applicable case law, each of Hudson's five claims fails as a matter of law and is due to be dismissed.

Following this same organizational approach, we now demonstrate that Hudson has done nothing in his Memorandum to defeat the showing made by AFGE in Parts I and II of its opening brief that it is entitled to summary judgment on each of Hudson's five claims.

   1.  <u>Claims 1, 2 & 3</u>

*Claim 1, Willie Hope.*  In AFGE's opening brief, we showed that Claim 1 in Hudson's Complaint—that President Cox "denied [his] request for Willie Hope's promotion" for impermissible race-based reasons, <u>see</u> Complaint ("Cplt") ¶ 29—fails as a matter of law and is due to be dismissed for the simple reason that, on the undisputed facts of record submitted by AFGE, Cox *approved* rather than "denied" Hudson's request for Hope's promotion.  <u>See</u> AFGE Br. at 5-6.

Remarkably in the face of AFGE's factual showing on this point, Hudson's Memorandum merely repeats verbatim the false allegation in ¶ 29 of his Complaint that President Cox "denied" rather than approved his request for Hope's promotion.  <u>See</u> Pl. Mem. at 23 ¶ 127.[1]  This head-in-the-sand approach gets Hudson nowhere, given the hornbook Rule 56 principle that where, as here, a defendant moving for summary judgment has shown through admissible record evidence that no reasonable jury could accept as true the factual allegations

---

[1] In an apparent effort to mask what he is doing, Hudson does not cite the Complaint in this paragraph of his so-called "**Statement of Material Facts Not in Dispute.**"  <u>See</u> Pl. Mem. at 1 (bolding in original).  Indeed, a substantial majority of the statements made in Hudson's **Statement** are unaccompanied by record citations, including the statements made in ostensible support of Hudson's Claims 2 & 3.  <u>See</u> <u>infra</u> pp. 4-5.

made by the plaintiff in his complaint in support of his claim(s), the plaintiff cannot avoid summary judgment merely by repeating and resting on those factual allegations.  See, e.g., Tarpley v. Greene, 684 F.2d 1, 7 (D.C. Cir. 1982); Dage v. Johnson, 537 F. Supp. 2d 43, 52-54 (D.D.C. 2008); see also generally Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) ("[I]n opposing a motion for summary judgment that is supported as provided in the Rule, the adverse party 'may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.'") (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)) (ellipsis in original).   On a straightforward application of this hornbook Rule 56 principle, AFGE plainly is entitled to summary judgment on Claim 1 in Hudson's Complaint.[2]

Claim 2, Committee Chairmanships.  In AFGE's opening brief, we showed that Claim 2 in Hudson's Complaint—that Cox "removed" him as Chair of the NAFI Committee for impermissible race-based reasons, see Cplt. ¶ 35—fails as a matter of law and is due to be dismissed for two independent reasons:  (a) taking all of the relevant facts in context, Cox's purported "removal" action did not constitute an "adverse employment action" under the applicable case law; and (ii) even if it did, no reasonable jury could conclude based on all of the relevant facts taken in context that Cox's purported "removal" action was taken for impermissible race-based reasons.  See AFGE Br. at 9-10 & n.5.

---

[2] Out of an abundance of caution, AFGE went on in this portion of its opening brief to address Hudson's attempt through his deposition testimony to substitute a new and distinctly different claim relating to Willie Hope—arguing, *first*, that this new claim should be disallowed on procedural grounds; and, *second*, that this new claim fails in any event on independent merits grounds.  See AFGE Br. at 6-9.  Because Hudson does not respond to any of AFGE's arguments on this issue anywhere in his 61-page Memorandum, this Court should take these arguments as conceded.  These arguments are meritorious on their face in any event we submit.

In this instance as well, Hudson takes a head-in-the-sand approach to AFGE's showing: He wholly ignores the contextual facts put in the summary judgment record by AFGE; wholly ignores the case law relied on by AFGE in support of its argument that, taken in context, Cox's purported "removal" action did not constitute an "adverse employment action" as a matter of law; and instead rests entirely on a verbatim repetition of the allegation in ¶ 35 of his Complaint that Cox "removed" him as Chair of the NAFI Committee for impermissible race-based reasons. See Pl. Br. at 23 ¶ 128.  Indeed, Hudson's head-in-the-sand approach is so complete here that he also repeats the allegation in ¶ 35 of his Complaint that his purported "removal" as Chair of the NAFI Committee took place "[i]n 2016," id., when the undisputed facts of record submitted by AFGE show that the "removal" action complained of by Hudson actually took place in 2014. See AFGE Br. at 9.  Thus, on both of the independent grounds set out in AFGE's opening brief, AFGE plainly is entitled to summary judgment on Claim 2 in Hudson's Complaint.

*Claim 3, COLAs.*  In AFGE's opening brief, we showed that the factual allegations underpinning Claim 3 in Hudson's Complaint —that Cox "gave" Hudson a slightly lower COLA than Cox "gave" himself and a Caucasian NVP for impermissible race-based reasons, see Cplt. ¶¶ 26-27—are belied from beginning to end by the undisputed facts of record submitted by AFGE.  See AFGE Br. at 10-13.  Yet once again, Hudson sticks his head in the sand and, in lieu of responding to (or even acknowledging) AFGE's showing, contents himself with a mere verbatim repetition of those factual allegations in his Complaint.  See Pl. Br. at 22 ¶ 126.  As we have shown with respect to Claims 1 & 2, Hudson cannot avert summary judgment on Claim 3 in this manner.

2.      Claims 4-5

With respect to Claims 4-5 in Hudson's Complaint, pertaining to Cox's actions in taking away certain authority previously exercised by Hudson, see AFGE Br. at 2, AFGE showed in its opening brief that Hudson's *own deposition testimony in this case* is fatal to both claims, see id. at 13-17. By way of brief review, under this Circuit's well-settled case law, a Title VII/§ 1981 plaintiff "shoots himself in the foot" by testifying "that the real explanation for the employer's behavior is not discrimination, but some other motivation." Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1291 (D.C. Cir. 1998) (en banc). When that happens, "there is no point in sending the case to the jury," id., because the discrimination claim fails as a matter of law. That is *precisely* what happened here. At his deposition, Hudson testified clearly and unequivocally that, in his first-hand view as the alleged victim in the matter, Cox took away his authority in each of the three areas complained of for political reasons and political reasons alone. See AFGE Br. at 14-15 (setting out in detail Hudson's deposition testimony pertaining to each area of authority).

In notable contrast to Hudson's head-in-the-sand approach with respect to AFGE's showing that it is entitled to summary judgment on Claims 1-3 in his Complaint, Hudson at least acknowledges and makes an effort to refute AFGE's showing that it is entitled to summary judgment on Claims 4-5 in his Complaint. But Hudson's effort badly misses the mark.

Although Hudson does not and cannot claim that AFGE misquoted or inaccurately described the Hudson deposition testimony set out in detail at pp. 14-15 of its opening brief, Hudson twice accuses AFGE of "selectively lift[ing]" excerpts of that Hudson deposition testimony out of his deposition. See Pl. Mem. at 46, 48. This accusation is baseless. On its face, this accusation of "selective[ ] lift[ing]" is an accusation that AFGE failed to cite *other* Hudson deposition testimony in its brief that, if brought to this Court's attention, would put the

Hudson deposition testimony that AFGE did cite in a different light helpful to Hudson's cause. Yet nowhere in Hudson's 61-page Memorandum does he identify that other Hudson deposition testimony helpful to Hudson's cause that AFGE purportedly failed to cite in its brief. The inescapable conclusion to be drawn from this conspicuous omission in Hudson's Memorandum is that no other Hudson deposition testimony helpful to Hudson's cause exists.[3]

Perhaps mindful of this fatal flaw in his "selective[ ] lift[ing]" accusation, Hudson switches gears completely and seeks effectively to disavow the Hudson deposition testimony cited in AFGE's brief on the ground that, when Hudson gave that deposition testimony in March of 2019, he was "unaware" of recently discovered "evidence" purportedly corroborating his allegation in this case that Cox harbors a racial animus towards African Americans. See Pl. Mem. at 46-47. But putting aside the fact that this recently discovered "evidence" does nothing of the kind, see infra pp. 13-15, Hudson's argument along these lines makes no sense at all even taken on its own terms. When Hudson sat for his deposition in March of 2019, he was already on record in his Complaint herein and in his interrogatory responses herein as alleging that Cox harbors a racial animus towards African Americans. And indeed, in the deposition itself, Hudson maintained that Cox had used words evincing such a racial animus towards African Americans dating as far back as 2006. See AFGE Br. at 22. Yet in that deposition, Hudson did not seek to attribute the employment actions complained of in Claims 4 & 5 to this alleged racial animus on Cox's part. Rather, Hudson gave sworn testimony clearly and unequivocally

---

[3] At another point in his Memorandum, Hudson accuses AFGE of selectively lifting excerpts from a different deposition given by Hudson in an earlier case. See Pl. Mem. at 61 (stating, in an to effort to disavow Hudson's deposition testimony in the Burnett case that he had not witnessed any racial discrimination at AFGE as of December 2015, that "AFGE is not being truthful with the Court. This is not the entirety of Mr. Hudson's deposition given in the Larry Burnett racial discrimination and sexual harassment case filed against AFGE."). But in this instance as well, Hudson cites nothing to back up this accusation.

attributing those employment actions to political considerations having nothing whatsoever to do with Hudson's race.  Against this background, Hudson cannot credibly disavow this clear and unequivocal deposition testimony by pointing to recently discovered "evidence" purportedly corroborating a view regarding Cox's attitude towards African Americans that Hudson, by his own account, had already formed *before* sitting for his deposition.

In an apparent last-ditch effort to salvage Claims 4 & 5 in his Complaint, Hudson makes the following highly inflammatory statement towards the very end of his Memorandum, unaccompanied by any supporting citation to AFGE's summary judgment papers:

> AFGE blatantly misstates that when Cox stopped Hudson from reviewing NEC member expense vouchers in June 2016, Hudson had already announced that he would be running against Cox for the NP position at AFGE's 2018 Convention.  This is simple false.  Mr. Hudson did **not** announce that he was running for President until December 2016, *months after* Cox stripped him of the two departments and took away his authority to review expense vouchers.

See Pl. Mem. at 61 (emphases in original).  So that the record is crystal clear on this point, in seeking summary judgment on Claims 4-5 in Hudson's Complaint, AFGE did *not* make the foregoing "misstate[ment]" of which it stands accused.  Indeed, as we have shown, AFGE's case for summary judgment on Claims 4-5 rests, not on any factual statements made by AFGE itself, but on Hudson's own sworn deposition testimony given on penalty of perjury.  And, try as he might, Hudson cannot escape the legal consequences of that sworn deposition testimony under the controlling D.C. Circuit authority set out at pp. 16-17 of AFGE's opening brief.

B.    Hudson's Other Efforts To Avert Summary Judgment Fail

Unable to refute the showing in Parts I and II of AFGE's opening brief that AFGE is entitled to summary judgment on each of his five remaining claims in this case, Hudson devotes

the lion's share of his 61-page Memorandum to a pair of diversionary arguments aimed at

masking that inability.  These other efforts by Hudson to avert summary judgment fail.

        1.       Hudson's first diversionary argument, which runs throughout his

Memorandum, is that he has presented sufficient evidence to raise a triable issue of fact as to

whether he was subjected to a racially hostile work environment at AFGE prior to his removal

from office.  See Pl. Mem. at 19 ¶ 108 ("AFGE offered no evidence in its motion for summary

judgment to rebut Mr. Hudson's prima facie case showing that there was a racially hostile

working environment at AFGE"); id. at 32 ("Plaintiff points to the following evidence that will

allow a reasonable jury to find that . . . President J. David Cox harassed him, discriminated

against him and created a hostile work environment"); id. at 45 ("Plaintiff offers this evidence

. . . to establish a prima facie case showing that Mr. Hudson suffered racial harassment and

endured a racially hostile work environment . . . .").

      This is a diversionary argument that gets Hudson nowhere, given that this Court

*dismissed* his racially hostile work environment claim at the outset of this case, and has since

rebuffed Hudson's effort to revive that dismissed claim on four separate occasions, either in this

case or in the related LMRDA case (No. 17-1867) involving Hudson's removal from office.  See

No. 17-1867, Order & Mem. Op., ECF Nos. 92-93 (denying Plaintiff's motion for leave to file a

Second Amended Complaint that would, among other things, have revived Hudson's racially

hostile work environment claim); id., Order, ECF No. 104 (denying Plaintiff's motion for

reconsideration of that Order denying leave to amend); No. 17-2094, Order, ECF No. 37

(denying Plaintiff's motion for leave to file that exact same Second Amended Complaint in this

case); id., 11/14/19 Minute Order (striking a substantively similar version of that Second

Amended Complaint).  Indeed, it speaks volumes that Hudson would devote such a substantial

portion of his Memorandum to the argument that he has presented sufficient evidence to raise a

triable issue of fact with regard to a dismissed claim.[4]

        2.     Hudson's second diversionary argument, which likewise runs throughout

his Memorandum, is that he has presented sufficient evidence to create a triable issue of fact as

to whether Cox harbors a racial animus towards African Americans.  This argument is a

diversion for two reasons.

        a.     First, as shown in AFGE's opening brief, under this Circuit's

controlling on-point decision in Morris v. McCarthy, 825 F.3d 658 (D.C. Cir. 2016), a Title

VII/§ 1981 plaintiff cannot avert summary judgment merely by raising a triable issue of fact as to

whether the person responsible for the challenged employment action(s) harbored a racial animus

towards members of the protected group to which the plaintiff belongs.  Rather, to avert

summary judgment, the plaintiff alleging such racial animus bears the *additional* burden of

raising a triable issue of fact as to whether that alleged racial animus seeped into and infected the

employment action(s) complained of.  See AFGE Br. at 23-24.

Hudson concedes, as he must, that he bears this additional burden here, but argues that he

has "surmounted that burden" by pointing to record evidence purportedly "corroborating" his

allegation that Cox harbors a racial animus towards African Americans.  See Pl. Mem. at 29.

This argument is a patent non sequitur.  By definition, even the most compelling record evidence

of racial animus on Cox's part (and Hudson's record evidence hardly is that, see infra pp. 11-15)

would do nothing to satisfy Hudson's additional burden to show that this racial animus seeped

---

[4] Although Hudson disavows "offer[ing] . . . evidence" pertaining to his removal from office for
the purpose of advancing his two other *dismissed* claims based on that removal, see Pl. Mem. at
45, he also devotes a substantial portion of his Memorandum to reciting that "evidence," see id.
at 16 ¶¶ 93-97; 20 ¶¶ 111-12; 23 ¶¶ 129-31; 38-39; 54-58.  This is yet another diversionary tactic
that gets Hudson nowhere.

into and infected the employment actions complained of by Hudson.  To "surmount[ ]" this additional burden, Hudson would need to do something along the lines successfully done by the plaintiff in <u>Morris v. McCarthy</u> itself:  namely, point to record evidence showing that the *non*-discriminatory reasons given by AFGE for the employment actions complained of by Hudson are "feeble," "unpersuasive" and/or lacking in "sincerity," thereby supporting the inference that those employment actions were driven by other considerations including potentially racial animus.  <u>See</u> 825 F.3d at 671-72.  As we have shown, Hudson has not done and cannot do anything of the kind here.  <u>See</u> AFGE Br. at 24-25.

        b.    Because Hudson's failure to meet the additional burden imposed by <u>Morris v. McCarthy</u> is dispositive, this Court need not consider and rule on Hudson's argument that he has presented sufficient evidence to raise a triable issue of fact as to whether Cox harbors a racial animus towards African Americans.  Nevertheless, for the sake of completeness, and in the interest of maintaining the factual integrity of the summary judgment record, we demonstrate below that this argument is entirely baseless (and thus diversionary) in its own right.

      In AFGE's opening brief, we anticipated and rebutted Hudson's argument that he has raised a triable issue of fact as to whether Cox harbors a racial animus towards African Americans based on (i) allegations respecting Cox's role in disposing of internal union charges brought by Hudson in 2011 against Witold Skwierczynski; and (ii) Hudson's deposition testimony respecting Cox's use of the words "son" and "boy."  <u>See</u> AFGE Br. at 18-23. Undaunted, Hudson presses both prongs of this argument here, but to no avail:

- With respect to Cox's role in disposing of Hudson's charges against Skwierczynski, Hudson persists in reciting a version of events that AFGE has shown to be false—stating without any record citation that Cox "appointed" the members of the committee that

investigated those charges, <u>see</u> Pl. Mem. at 59, when in fact it was Cox's predecessor John Gage who did so, <u>see</u> AFGE Br. at 18; and further stating, again without any record citation, that Cox "dismissed all charges against Skwierczynski," <u>see</u> Pl. Mem. at 8 ¶ 42, when in fact Cox played the more limited role of reviewing and accepting the investigatory committee's factual findings and recommendations, <u>see</u> AFGE Br. at 18-20. Beyond that, Hudson argues that AFGE's evidence that Cox has a consistent practice of accepting investigatory committee factual findings and recommendations and followed that practice in the Skwierczynski matter, <u>id.</u>, is belied (or so a reasonable jury could find) by other record evidence showing that Cox is an "autocratic" manager whose modus operandi is to go after "anyone who opposes him" in the management of AFGE's affairs, and who "could care less about the opinion of a Committee whose members he appointed," <u>see</u> Pl. Mem. at 59.  This argument is baseless, because Cox's general "management style," <u>id.</u>, is irrelevant to whether Cox has a consistent practice of deferring to investigatory committee members whose fact-finding activities he does *not* manage and whether Cox followed that practice in the Skwierczynski matter.  This is especially so in the latter regard, inasmuch as there is no record evidence that the investigatory committee in the Skwierczynski matter included anyone "who oppose[d]" Cox in the management of AFGE's affairs, and the record evidence affirmatively shows that the committee members were not "appointed" by Cox as Hudson asserts.

- With respect to Hudson's deposition testimony on Cox's use of the words "son" and "boy," Hudson once again fails to address (much less contravene) AFGE's showing, wholly ignoring key aspects of his own deposition testimony cited by AFGE in its opening brief that, together with Cox's deposition testimony, put the deposition

testimony touted by Hudson in its full and proper factual context and show that Cox's use of these terms cannot reasonably be taken as indicative of racial animus.  Both Cox *and* Hudson testified that Cox was raised in a place and an environment in which terms such as "son" and "boy" were commonly used to address or refer to persons of all races, and Cox testified without contradiction that he in fact uses these terms to address and refer to persons of all races.  See AFGE Br. at 20-23.

In an effort to prop up his argument that he has presented sufficient evidence to raise a triable issue of fact as to whether Cox harbors a racial animus towards African Americans, Hudson devotes a substantial portion of his Memorandum to a recitation of certain recently discovered "evidence" that, as Hudson would have it, is indicative of racial animus on Cox's part.  On inspection, however, that recitation serves only to underscore Hudson's willingness to play fast and loose with the facts in advancing this argument.  To back up this point, we separately address each item of newly discovered "evidence" tendered by Hudson, and show that none of that "evidence" is remotely indicative of racial animus on Cox's part.

- *Jocelynn Johnson's EEOC claim.*  Hudson seeks to prop up his argument by asserting (without any supporting record citation) that the EEOC "found probable cause" for a race discrimination charge brought against AFGE by Jocelynn Johnson in 2015, and by adding that Cox "signed" the Mediation Settlement Agreement approved by the EEOC in that matter.  See Pl. Mem. at 8 ¶¶ 44-45; 37.  But this recitation of the facts pertaining to the Johnson EEOC charge could not be more off base.  First, to the extent that the statement that Cox "signed" the Mediation Settlement Agreement is meant to imply that Cox was implicated in the racially discriminatory conduct alleged by Johnson in her EEOC charge, that implication is belied by the charge itself, a copy of which is included

-13-

as an Exhibit to Hudson's Memorandum.  <u>See</u> ECF No. 48-3.  Second, and more

troubling, Hudson's unsupported statement that the EEOC "found probable cause" for

Johnson's charge is a blatant misrepresentation.  In truth, in a cover letter to the parties

transmitting the EEOC's signed copy of the Mediation Settlement Agreement, the EEOC

pointedly disclaimed having made "*any* judgment" with respect to "the merits of the

[Johnson] charge."  <u>See</u> Declaration of G. Goldberg, Exh. 1 (emphasis added).

- *The Baca Affidavit*.  Hudson also seeks to prop up his argument through an extended
  discussion of an Affidavit by Pam Baca, a former AFGE official, but again to no avail.
  The Baca Affidavit accuses two AFGE officials (Gerald Swanke and Phil Glover) of
  using the unambiguously racist term "simple minded black" or "SMB," *but does not
  accuse Cox himself of ever doing so.*  Nevertheless, Hudson seeks to tar Cox with
  Swanke's alleged impropriety by asserting—again without any supporting record
  citation—that Swanke used the term SMB "both in J. David Cox's presence at [an]
  elevator with Swanke and during the December 2017 NEC meeting over which Cox
  presided."  <u>See</u> Pl. Mem. at 27.  Hudson appears to point to his own deposition testimony
  as the evidentiary source for this "elevator" incident, <u>id.</u>, but we have scoured the Hudson
  deposition and found no testimony remotely supporting Hudson's version of that
  incident.  The Baca Affidavit deals explicitly with Swanke's alleged use of the term SMB
  at the December 2017 NEC meeting, but it states that Swanke used that term in front of
  Baca and Glover, *never mentioning Cox at all*.  <u>See</u> Baca Affidavit, ECF No. 48-2, at 14-
  15.  Thus, even accepting the highly dubious proposition that Hudson could raise a triable
  issue of fact as to whether Cox harbors a racial animus towards African Americans based

-14-

on record evidence that another AFGE official used an unambiguously racist term in
Cox's presence, there is no such record evidence in this case.

- *The Kabir Affidavit.*  Finally, Hudson seeks to prop up his argument through an extended
  discussion of an Affidavit by Rocky Kabir, Cox's former secretary, again to no avail.   In
  the main, the Kabir Affidavit deals with issues regarding Hatch Act compliance, ECF No.
  48, and thus is not at all germane here.  Nevertheless, Hudson seizes on the statement in
  Kabir's Affidavit that Cox regularly referred to him as "boy" and "son" over Kabir's
  objections.  See Pl. Mem. at 51.  In doing so, Hudson does not identify Kabir's race, but
  Kabir's statement that "many of my friends are African-American," see id., indicates that
  Kabir himself is not African American.  That being so, the Kabir Affidavit serves only to
  corroborate Cox's deposition testimony that he uses the terms "son" and "boy" to refer to
  people of all races.  Compare Richardson v. Petasis, 160 F. Supp. 3d 88, 112 (D.D.C.
  2015) (rejecting the plaintiff's assertion that the use of the word "boy" created an
  inference of discrimination where that term was used with employees of Ethiopian,
  Filipino and Iranian origin).

*        *        *        *

In sum, Hudson's Memorandum does nothing to defeat the showing in AFGE's summary
judgment papers that AFGE is entitled to summary judgment on each of Hudson's remaining
claims in this case.  Accordingly, AFGE's motion for summary judgment on those claims should
be granted, and Hudson's cross-motion for summary judgment on those claims denied.

**II.    HUDSON'S CROSS-MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED IRRESPECTIVE OF THIS COURT'S RULING ON AFGE'S SUMMARY JUDGMENT MOTION**

Hudson's cross-motion for summary judgment should be denied irrespective of this Court's ruling on AFGE's summary judgment motion.  That is so for two independent reasons.

First, Hudson's cross-motion is untimely and should be stricken on that basis alone. Immediately after a status conference held by the Court on March 21, 2019, this Court entered a Scheduling Order providing, in the clearest possible terms, that "Summary Judgment motions [are] due by 6/21/2019."  Hudson filed his cross-motion for summary judgment on January 22, 2020, a full seven (7) months after this filing deadline.  Hudson has not offered any reason or justification for this inordinate delay, and we cannot conceive of any.

Second, Hudson's cross-motion is not a genuine summary judgment motion properly before this Court in any event, because it does not even attempt to make the kind of showing that Rule 56 requires in support of a genuine summary judgment motion, or even make the claim that Hudson is entitled to the summary relief contemplated by Rule 56.  On its face, Rule 56 requires the moving party to show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  But the entire thrust of the Memorandum filed by Hudson is that (i) there *are g*enuine disputes of material fact going to the ultimate issue of whether AFGE has taken racially discriminatory adverse employment actions against him; and (ii) that being so (in Hudson's view at least), this case *cannot* be resolved in *either* party's favor "as a matter of law," but must instead be submitted to a fact-finder (here, a jury) for resolution.  See Pl. Mem. at 32 ("In his opposition and cross claim for summary judgment, Plaintiff points to the following evidence that will allow a reasonable jury to find that

-16-

he has suffered legally cognizable adverse employment actions.").  Thus, by Hudson's own lights, he has not filed a genuine Rule 56 motion for summary judgment at all.

## CONCLUSION

For the foregoing reasons, and those stated in AFGE's opening brief, this Court should grant AFGE's motion for summary judgment and deny Hudson's cross-motion for summary judgment.

Respectfully submitted,


*/s/ Andrew D. Roth*
Andrew D. Roth (D.C. Bar No. 414038)
Devki K. Virk (D.C. Bar No. 459418)
Elisabeth Oppenheimer (D.C. Bar 888230912)
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street N.W., Suite 1000
Washington, DC 20005
(202) 842-2600
aroth@bredhoff.com
dvirk@bredhoff.com
eoppenheimer@bredhoff.com

Counsel for AFGE